# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2026 ND 29

Brett Michael Kingstone,                         Plaintiff and Appellant

      v.

Trisa Ranae Tedrow Kingstone,               Defendant and Appellee

### No. 20250346

Appeal from the District Court of Eddy County, Southeast Judicial District, the Honorable James D. Hovey, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Justice.

Jacey L. Johnston (argued) and Blayze Fisher (on brief), under the Rule on Limited Practice of Law by Law Students, Grand Forks, ND, for plaintiff and appellant.

Robert G. Will, Minot, ND, for defendant and appellee.

**Jensen, Justice.**

[¶1]   In *Kingstone v. Tedrow Kingstone*, we reversed an upward deviation from the presumptive guideline amount of child support awarded to Trisa Tedrow Kingstone and remanded for additional findings and a redetermination on whether the upward deviation was appropriate. 2025 ND 40, ¶ 55, 17 N.W.3d 596. We also directed a reconsideration of the amount of life insurance Brett Kingstone had been ordered to maintain because it was based on the amount of his child support obligation. *Id.* ¶ 50. Brett Kingstone appeals from an order reinstating the upward deviation after additional findings, and reinstating the amount of the life insurance policy. We affirm.

I

[¶2]   The pertinent facts are stated in detail in the previous appeal; we focus here on the reasons for our remand and the proceedings that occurred in the district court following the remand. The original judgment in this case awarded Trisa Tedrow Kingstone $5,000 per month in child support for L.R.K. which included an upward deviation of $1,500 from the presumptive guideline amount of $3,500. The court found the upward deviation appropriate because Brett Kingstone's monthly income exceeds $25,000, and L.R.K. has disabling conditions. *See* N.D. Admin. Code § 75-02-04.1-09(2)(b) and (d). The judgment also required Brett Kingstone to maintain a $750,000 life insurance policy for L.R.K.'s benefit.

[¶3]   Brett Kingstone appealed the original judgment, challenging the upward deviation in child support and his obligation to maintain a life insurance policy to secure the support obligation. We determined "the district court's findings are insufficient to support its upward deviation in the child support obligation under N.D. Admin. Code § 75-02-04.1-09(2)(b) and (d)." *Kingstone*, 2025 ND 40, ¶ 36. We also held "the court made no finding why a deviation under N.D. Admin. Code § 75-02-04.1-09(2)(h) is in the best interest of L.R.K. or why a $1,500 upward deviation in child support is an appropriate amount." *Id.* ¶ 43. We

rejected Brett Kingstone's challenge to his obligation to maintain the life insurance policy, but because the amount of the policy was based on the amount of child support, we directed the court "to reconsider the amount of the insurance policy" because the amount of child support "may change on remand." *Id.* ¶ 50.

[¶4]   On remand, the district court entered supplemental findings and an order again determining the $1,500 upward deviation was appropriate. The court found it was in L.R.K.'s best interest to deviate upward because she has genetic lifelong health conditions and "it is always in the best interest of a child to meet her needs." The court also found it was in L.R.K.'s best interests to deviate upward to permit her "to enjoy a standard of living comparable to that which she had prior to the divorce."

[¶5]   With respect to the amount of the upward deviation based on L.R.K.'s needs, the district court found Trisa Tedrow Kingstone has monthly expenses of $2,000 associated with meeting L.R.K.'s medical needs and developmental delays, based upon a financial affidavit to which Brett Kingstone had stipulated. The court gave specific examples of expenses not already included in Brett Kingstone's duty to pay for medical expenses, such as round-trip travel expenses (including vehicle maintenance and meals) between New Rockford and Carrington, New Rockford and Jamestown, and New Rockford and Fargo for frequent appointments related to L.R.K.'s needs, which included speech therapy, occupational therapy, physical therapy, an interventionist, special education, a gymnastics program, and doctor visits. The court attributed $750 per month for costs and expenses related to L.R.K.'s needs under N.D. Admin. Code § 75-02-04.1-09(2)(b) and (d).

[¶6]   With respect to the amount of the upward deviation based on L.R.K.'s standard of living, the district court gave specific examples to illustrate the standard of living L.R.K. enjoyed while the family was intact, which included: (1) a luxury home in Colorado; (2) an additional home in Florida; (3) privileges enjoyed by Brett Kingstone's other children such as a housekeeper, tutors, and extensive travel; and (4) the fact that Trisa Tedrow Kingstone was previously a stay-at-home mom that could better meet L.R.K.'s substantial developmental

and medical needs. The court attributed $750 per month to maintain L.R.K.'s standard of living under N.D. Admin. Code § 75-02-04.1-09(2)(h).

[¶7]   After finding the amount of child support would remain unchanged, the district court reinstated Brett Kingstone's obligation to maintain a $750,000 life insurance policy for L.R.K.'s benefit.

## II

[¶8]   Brett Kingstone challenges the district court's fact findings regarding the upward deviation in his child support obligation. As we noted in the first appeal:

> Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made.

*Kingstone*, 2025 ND 40, ¶ 10 (quoting *Williams v. Williams*, 2023 ND 240, ¶ 14, 999 N.W.2d 192).

## A

[¶9]   Brett Kingstone challenges the district court's finding that it was in L.R.K.'s best interest to deviate upwards from the presumptive guideline amount, arguing the finding was not sufficiently explicit.

[¶10] Under N.D. Admin. Code § 75-02-04.1-09(2), an upward deviation from the presumptive child support amount is permissible if it is in the best interest of the child and one or more of the enumerated criteria under subsection (2) is met. Here, the district court applied the criteria under subdivision (b) (the increased ability of an obligor with a monthly net income in excess of $25,000) in conjunction with the criteria under subdivision (d) (the increased needs of a child with disabling conditions or chronic illness) and found that it was in L.R.K.'s best interest to deviate upwards to meet L.R.K.'s needs. The court also applied

3

subdivision (h) (the increased ability of an obligor who can secure additional income from assets) and found that it was in L.R.K.'s interest to deviate upwards to maintain her previous standard of living.

[¶11] In *Nuveen v. Nuveen*, "[t]he district court found an upward deviation of Michiel Nuveen's child support would be in the best interests of the children . . . ." 2012 ND 260, ¶ 4, 825 N.W.2d 863. The explanation the district court provided was that "a deviation would be in the best interests of the children based on the children's 'more expansive needs.'" *Id.* ¶ 8. The court noted the children "would miss out on trips, camps, and other comforts of life they used to enjoy without a deviation," and also noted the large disparity between the entertainment budgets of the obligor and obligee. *Id.* We upheld the court's finding that an upward deviation was in the best interests of the children. *Id.* ¶ 11.

[¶12] The explicit reasons given by the district court here to support its best-interest finding were similar to the ones we affirmed in *Nuveen*. Similar to *Nuveen*, the court said it was in the best interest of L.R.K. to deviate upwards to meet the child's needs, and there is abundant evidence in the record to show L.R.K. has needs arising from disabling conditions or chronic illness. Similar to *Nuveen*, where the court gave specific examples of trips, camps, and other comforts of life the children used to enjoy, the court said it was in the best interest of L.R.K. to deviate upwards to maintain her previous standard of living, giving specific examples of the comforts of life she used to enjoy.

[¶13] In *Nuveen*, the obligor's monthly income exceeded $42,000, and the upward deviation we upheld was $1,294 per month. Here, Brett Kingstone's monthly income is near or above $120,000, plus we determined in the first appeal that his ability to secure additional income from his significant assets "is supported by the record." *Kingstone*, 2025 ND 40, ¶ 43. The upward deviation here is $1,500, similar to the one upheld in *Nuveen*, without even considering the threefold difference between the respective obligors' incomes and assets.

[¶14] "Children should be able to enjoy more than the subsistence level of support if the parents can afford greater amounts." *Montgomery v. Montgomery*,

481 N.W.2d 234, 236 (N.D. 1992) (cleaned up); *see also Bernhardt v. Bernhardt*, 1997 ND 80, ¶ 12, 561 N.W.2d 656 (implicitly recognizing that it is in a child's best interest "to enjoy a standard of living post-divorce comparable to that enjoyed while the family was intact" when there are sufficient resources (cleaned up)).

[¶15] The district court's findings are explicit enough for us to understand why it found L.R.K.'s best interests were served by a deviation from the presumptive guideline amount. *See L.C.V. v. D.E.G.*, 2005 ND 180, ¶ 11, 705 N.W.2d 257 (finding error only "when the required findings are not intelligible"); *Wolf v. Wolf*, 474 N.W.2d 257, 258 (N.D. 1991) ("[F]indings are adequate if we are able to understand from them the factual basis for the trial court's determination."). The court's findings "are sufficient to uphold the district court's finding that it would be in the best interests of [L.R.K.] to deviate upward from the presumptive child support amount." *Nuveen*, 2012 ND 260, ¶ 8.

B

[¶16] Brett Kingstone challenges the amount of the needs-based upward deviation, arguing the findings were insufficient to justify the amount of $750 per month because the district court relied upon Trisa Tedrow Kingstone's generalized $2,000 monthly expense claim.

[¶17] In the first appeal, we said the district court's reliance upon the $2,000 monthly expense claim left us "unable to properly assess the reasonableness of the deviation amount" where the "court's order lack[ed] explanation or quantification of how it arrived at the upward deviation amount." *Kingstone*, 2025 ND 40, ¶ 34. On remand, the court did more than reference the $2,000 monthly expense claim (to which Brett Kingstone had stipulated). The court referenced the frequent trips to Jamestown, Carrington, and Fargo of seven different types that L.R.K.'s needs required, the distance of each roundtrip, North Dakota's current reimbursement rate for mileage, vehicle maintenance and meals which might be required by the out-of-town trips, and further noted these "expenses are not included in Brett [Kingstone]'s [existing] duty to pay for medical expenses."

[¶18] The appropriate increased needs of a child with a disabling condition or chronic illness can include "reasonable costs of supplemental education" of the type referenced by the district court for the frequent out-of-town trips that resulted in expenses to Trisa Tedrow Kingstone not already included in Brett Kingstone's duty to pay for medical expenses. *Entzie v. Entzie*, 2010 ND 194, ¶ 27, 789 N.W.2d 550. Furthermore, this Court has noted more than once that "a line-by-line accounting of the needs of the [child] is unnecessary[.]" *Kingstone*, 2025 ND 40, ¶ 34 (quoting *Shae v. Shae*, 2014 ND 149, ¶ 8, 849 N.W.2d 173).

[¶19] The district court's findings are explicit enough for us to understand why it deviated in the amount of $750 per month for L.R.K.'s needs. *See, e.g., L.C.V.*, 2005 ND 180, ¶ 11; *Wolf*, 474 N.W.2d at 258. Because there is some evidence to support the amount of the upward deviation for L.R.K.'s needs, the court's finding is not clearly erroneous. *See, e.g., Kingstone*, 2025 ND 40, ¶ 10 (indicating a finding of fact is clearly erroneous if "no evidence exists to support it" (quoting *Williams*, 2023 ND 240, ¶ 14)).

C

[¶20] Brett Kingstone challenges the amount of the standard-of-living upward deviation, again arguing the district court's findings were insufficient to justify the upward deviation in the amount of $750 per month.

[¶21] The district court explained that its standard-of-living deviation was appropriate under N.D. Admin. Code § 75-02-04.1-09(2)(h). The focus of subdivision (2)(h) is "the best interests of the children and the obligor's ability to secure additional income from assets." *Thompson v. Johnson*, 2018 ND 142, ¶ 19, 912 N.W.2d 315 (quoting *Entzie*, 2010 ND 194, ¶ 22). The court had previously found Brett Kingstone "has the increased ability to secure additional income from his significant assets," and this Court affirmed that issue in the first appeal. *See Kingstone*, 2025 ND 40, ¶ 43 ("The district court's finding Brett Kingstone has an increased ability to support is supported by the record."). In addition, this Court has at least implicitly recognized that it is in a child's best interest "to enjoy a standard of living post-divorce comparable to that enjoyed while the family

6

was intact" when there are sufficient resources. *Bernhardt*, 1997 ND 80, ¶ 12 (quoting *Montgomery*, 481 N.W.2d at 236).

[¶22] "We recognized in *Nuveen* that a line-by-line accounting of the needs of the children is unnecessary and the needs of a child in a family with substantial income are more expansive because of the standard of living the family has enjoyed." *Shae*, 2014 ND 149, ¶ 8 (cleaned up). In *Nuveen*, the district court referred to trips, camps, and other comforts of life the children previously enjoyed to explain its upward deviation. *Nuveen*, 2012 ND 260, ¶ 8. Similarly, here, the court gave specific examples to illustrate the standard of living L.R.K. enjoyed while the family was intact, which included: (1) a luxury home in Colorado; (2) an additional home in Florida; (3) privileges enjoyed by Brett Kingstone's other children such as a housekeeper, tutors, and extensive travel; and (4) the fact that Trisa Tedrow Kingstone was previously a stay-at-home mom who could better meet L.R.K.'s substantial developmental and medical needs.

[¶23] The findings of the district court in this case are at least as explicit as the findings we upheld in *Nuveen*, if not more explicit. The disparity in income between the obligor and obligee is greater in this case than in *Nuveen*. The findings here are certainly sufficient for us to understand why the court deviated in the amount of $750 per month to maintain L.R.K.'s standard of living. *See, e.g., L.C.V.*, 2005 ND 180, ¶ 11; *Wolf*, 474 N.W.2d at 258. Because there is some evidence to support the amount of the upward deviation for L.R.K.'s standard of living, the court's finding is not clearly erroneous. *Kingstone*, 2025 ND 40, ¶ 10.

III

[¶24] Brett Kingstone challenges the district court's order reinstating his obligation to maintain a $750,000 life insurance policy for L.R.K.'s benefit, relying largely upon the fact that he already maintains a 529 college savings plan and a Uniform Transfers to Minors Act (UTMA) account for L.R.K.

[¶25] In the first appeal, we held "the district court did not abuse its discretion in ordering Brett Kingstone to maintain a life insurance policy for L.R.K." *Kingstone*, 2025 ND 40, ¶ 50. We addressed and rejected Brett Kingstone's arguments about the 529 college savings plan and UTMA account. *Id.* ¶ 49. The

scope of our remand was limited to reconsidering the amount of the life insurance policy in the event the amount of Brett Kingstone's child support obligation changed. *Id.*

[¶26] "On remand, district courts must follow the mandate rule." *Walstad v. Walstad*, 2013 ND 176, ¶ 9, 837 N.W.2d 911. This includes the fact that "[a] party cannot on a second appeal relitigate issues which were resolved by the Court in the first appeal . . . ." *State ex rel. N.D. Dep't of Labor v. Riemers*, 2010 ND 43, ¶ 11, 779 N.W.2d 649. "Where the facts remain the same . . . the mandate rule . . . requires the trial court to follow pronouncements of an appellate court on legal issues in subsequent proceedings of the case and to carry the appellate court's mandate into effect according to its terms." *Carlson v. Workforce Safety & Ins.*, 2012 ND 203, ¶ 16, 821 N.W.2d 760 (cleaned up).

[¶27] Here, the operative fact that drove our remand on the life insurance policy was whether the amount of Brett Kingstone's child support might change. Because the amount of the child support obligation remained the same, the district court's reinstatement of the life insurance obligation is consistent with the limited scope of our remand. The court did not abuse its discretion in ordering Brett Kingstone to continue to maintain a $750,000 life insurance policy for L.R.K.'s benefit. *See Kingstone*, 2025 ND 40, ¶ 50 (applying an abuse-of-discretion standard of review to this issue).

IV

[¶28] We affirm the district court's order awarding Trisa Tedrow Kingstone a $1,500 upward deviation from the presumptive guideline amount and reinstating Brett Kingstone's obligation to maintain a $750,000 life insurance policy for L.R.K.'s benefit.

[¶29] Lisa Fair McEvers, C.J.
 Daniel J. Crothers
 Jerod E. Tufte
 Jon J. Jensen
 Douglas A. Bahr